IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DIONNE DIXON, TONYA FORTUNE, and WANDA DALLAS, | |
| Plaintiffs, | CIVIL ACTION FILE NO. |
| v. | 1:12-CV-3922-TWT-JFK |
| R. DAVID WARE, in his individual capacity, and FULTON COUNTY, GEORGIA, | |
| Defendants. | |

## NON-FINAL REPORT AND RECOMMENDATION

The above-styled employment discrimination case is before the court on Defendants' motion [Doc. 12] to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Plaintiffs Dionne Dixon, Tonya Fortune, and Wanda Dallas allege that Defendants Fulton County and R. David Ware, in his individual capacity, violated the Equal Protection Clause of the United States Constitution by subjecting Plaintiffs to a sexually hostile work environment. [Doc. 1]. Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983. [Id.]. According to Plaintiffs' complaint, Defendants subjected

them to sexual harassment, took "adverse employment actions against the Plaintiffs for their refusal to acquiesce to sexual advances, and . . . fail[ed] to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct." [Doc. 1 at 19].  Defendants argue that the court should dismiss Plaintiffs' claims because they fail as a matter of law.  [Doc. 12].

## I.     Standard of Review

On a motion to dismiss under Rule 12(b)(6), the complaint's factual allegations are assumed true and construed in the light most favorable to the plaintiff.  Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006); M.T.V. v. DeKalb County School Dist., 446 F.3d 1153, 1156 (11th Cir. 2006).  "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002) (citations omitted).  The Federal Rules of Civil Procedure do not require that a plaintiff detail the facts upon which the plaintiff bases a claim.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (as amended 2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his

2

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted); accord Financial Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (recognizing that "while notice pleading may not require that the pleader allege a specific fact to cover every element or allege with precision each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory") (citations and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level," i.e., they must do more than merely create a "'suspicion [of] a legally cognizable right of action,' on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 127 S. Ct. at 1965 (citations omitted) (emphasis omitted).  "Stated differently, the factual allegations in a complaint must 'possess enough heft' to set forth 'a plausible entitlement to relief[.]'"  Stephens, 500 F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67).  A plaintiff's complaint will be dismissed if it does not contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

3

(citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The court's inquiry at this stage of the proceedings focuses on whether the challenged pleadings "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted). And, a court reviewing a motion to dismiss must keep in mind that a "motion to dismiss for failure to state a claim upon which relief can be granted merely tests the sufficiency of the complaint; it does not decide the merits of the case." Wein v. American Huts, Inc., 313 F. Supp. 2d 1356, 1359 (S.D. Fla. 2004) (citing Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984)). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law." Bernard v. Calejo, 17 F. Supp. 2d 1311, 1314 (S.D. Fla. 1998) (citing Marshall County Board of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) ("[T]he court may dismiss a complaint . . . when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action.")); see also Glover v. Liggett Group, Inc., 459 F.3d 1304, 1308 (11th Cir. 2006) (same); Aque v. Home Depot U.S.A., Inc., 629 F. Supp. 2d 1336, 1350 (N.D. Ga. 2009).

The court will apply these standards in ruling on Defendants' motion to dismiss the complaint.

## II.    Discussion

Plaintiffs allege that Defendants subjected them to a sexually hostile work environment in violation of the Equal Protection Clause.[1]  [Doc. 1].  Defendants make three arguments in support of their Rule 12(b)(6) motion to dismiss Plaintiffs' complaint for failure to state a claim.  First, Defendants argue that Plaintiffs have not set forth a facially plausible claim of sexual harassment under the tangible employment action theory.  [Doc. 12 at 9-11].  Second, Defendant Fulton County contends that it may not be held liable on Plaintiff's claims because the County did not act pursuant to an official policy or custom.  [Doc. 12 at 11-18].  Third, individual Defendant David Ware argues that he is entitled to qualified immunity because Plaintiffs are unable to show that he violated clearly established law.  [Doc. 12 at 19-30].

Although Defendants contend that Plaintiffs' sexual harassment claims under a tangible employment action theory cannot survive a motion to dismiss, Plaintiffs

---

[1]The Eleventh Circuit Court of Appeals has noted that "discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause, 42 U.S.C. § 1981, or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, are subject to the same standards of proof and employ the same analytical framework." Bryant v. Jones, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009) (citations omitted).

5

correctly note that Defendants have made no argument that dismissal is warranted on their claims that Defendant David Ware's actions created a sexually hostile work environment. [Doc. 16 at 2]. Defendants make no argument to the contrary in their reply brief. [Doc. 19]. And irrespective of Defendants' motion, as discussed *infra*, Plaintiffs' complaint clearly states a claim for hostile work environment upon which relief can be granted.

### A.    Tangible Employment Action Sexual Harassment

"Generally, sexual harassment comes in two forms:  harassment that does not result in a tangible employment action (traditionally referred to as 'hostile work environment' harassment), and harassment that does result in a tangible employment action (traditionally referred to as '*quid pro quo*' harassment)." <u>Johnson v. Booker T. Washington Broadcasting Service, Inc.</u>, 234 F.3d 501, 508 (11th Cir. 2000) (citing <u>Burlington Industries, Inc. v. Ellerth</u>, 118 S. Ct. 2257, 2268-70 (1998)). In <u>Ellerth</u>, the Supreme Court explained that "the labels *quid pro quo* and hostile work environment are not controlling for purposes of establishing employer liability . . . ." 118 S. Ct. at 2271. However, the terms are relevant to "the extent they illustrate the distinction between cases involving a threat which is carried out and offensive conduct in general . . . ." <u>Id.</u> at 2265. The Eleventh Circuit in <u>Mendoza v. Borden, Inc.</u>, 195 F.3d 1238

6

(11th Cir. 1999), described *quid pro quo* sexual harassment, also referred to as tangible employment action sexual harassment, as follows:

> The paradigm of sexual harassment as federally prohibited employment discrimination occurs when an employee's expressed terms of employment, such as salary or continued employment, are conditioned upon compliance with the employer's sexual demands. . . .  In such a case, traditionally described as quid pro quo harassment, the "discrimination with respect to terms or conditions of employment [is] explicit."

Id. at 1245 (quoting Ellerth, 118 S. Ct. at 2264).

"To establish a *prima facie* case of tangible employment action sexual harassment, plaintiff must show that (1) [she] belongs to a protected group; (2) [she] was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) [she] suffered a tangible employment action; and (5) there is a causal link between the tangible employment action and the sexual harassment." Smith v. Pefanis, 652 F. Supp. 2d 1308, 1331 (N.D. Ga. 2009) (citation and internal quotation marks omitted). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 118 S. Ct. at 2268.

7

Plaintiff Dixon began working for the Fulton County Attorney's office as a paralegal in October 2008, about a month before Defendant Ware became the Fulton County Attorney. [Doc. 1 ¶ 11]. Dixon alleges in the complaint that beginning in the middle of 2010, Ware began making sexual comments to her and repeatedly pressured her to have sex with him. [Id. ¶¶ 16-28]. The complaints states, "On multiple occasions, Ware told her that he and she could have sex on the couch in his office. Ware often added that, since he was the boss, he could just lock his office door and no one would ever know." [Id. ¶ 17]. Plaintiff did not comply with Ware's requests for sex. [Doc. 1 ¶¶ 44-45]. On July 28, 2011, Dixon went on medical leave from work because she was pregnant. [Id. ¶¶ 29-35]. Dixon returned to work on December 7, 2011, and Ware terminated her employment the next day, December 8, 2011. [Id. ¶¶ 36-43]. Dixon alleges that Defendant Ware terminated her employment because she would not acquiesce to his sexual demands and/or because she told Ware to stop his sexual advances. [Id. ¶¶ 44-45]. Although Defendants acknowledge that Ware took a tangible employment action against Dixon, they argue that she "fails to allege any facts plausibly linking her termination to any alleged sexually harassing incident." [Doc. 12 at 9]. Defendants contend that because more than four months passed between the last alleged incident of sexual harassment and Dixon's termination, no

8

inference of a causal relationship can be established between the two events. [Doc. 12 at 9-11].

The court disagrees with Defendants' argument and concludes that Dixon has presented sufficient factual allegations to state a claim for tangible employment action sexual harassment. As Plaintiffs note, the Eleventh Circuit has written:

> [A]ny time the harasser makes a tangible employment decision that adversely affects the plaintiff, an inference arises that there is a causal link between the harasser's discriminatory animus and the employment decision. A Title VII plaintiff, therefore, may establish her entire case simply by showing that she was sexually harassed by a fellow employee, and that the harasser took a tangible employment action against her.

Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1247 (11th Cir. 1998); accord Arnold v. Tuskegee University, 212 Fed. Appx. 803, 807 (11th Cir. 2006). This is precisely what Plaintiff Dixon has alleged in the present case. Dixon claims that she was sexually harassed by Defendant Ware and that he made the decision to terminate her employment. Defendants argue that the time period of more than four months between the last act of sexual harassment and the termination eliminates any inference of a causal nexus. [Doc. 12 at 11]. However, given the Eleventh Circuit's language in Llampallas, it seems clear that even with the lapse of four months, Dixon has alleged facts sufficient to allow an inference of a causal link between Ware's sexually

9

harassing behavior and his decision to terminate Dixon's employment. Moreover, Dixon was on medical leave during most of the time period when Ware was not sexually harassing her. [Doc. 1 ¶¶ 33-36]. In light of these allegations, and the fact that Ware fired Dixon the day after she returned from medical leave, the court finds that she has stated a claim for tangible employment action sexual harassment.[2]

Defendants argue that the tangible employment action sexual harassment claims asserted by Plaintiffs Fortune and Dallas should be dismissed because neither individual alleges that she suffered any tangible employment action. [Doc. 12 at 9]. Fortune and Dallas respond that Defendants made their working conditions so intolerable that they were constructively discharged. [Doc. 16 at 17-19]. For sexual harassment to be actionable, it "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher v. City of Boca Raton, 118 S. Ct. 2275, 2283 (1998). "A hostile-environment constructive discharge claim entails something more: A plaintiff who advances such a compound claim must show working conditions so

_____

[2]The court also notes that the cases relied upon by Defendants involved summary judgment motions filed after discovery rather than motions to dismiss. See e.g., Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1229-31 (11th Cir. 2006); Orquiola v. National City Mortg. Co., 510 F. Supp. 2d 1134, 1137-38 (N.D. Ga. 2007).

intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police v. Suders, 124 S. Ct. 2342, 2354 (2004).

The complaint alleges that on multiple occasions Ware told Fortune that she needed someone to take care of her, that her fiancé was not capable of doing that, and that Ware was having marital difficulties. [Doc. 1 ¶¶ 48, 49]. In April 2010, after Ware had frequently made sexually suggestive comments to Fortune for many months, Fortune told an official in Fulton County's Office of Equal Employment Opportunity ("OEEO") about Ware's unwanted sexual advances toward her. [Doc. 1 ¶ 50]. Although Fortune stated that she wished to discuss how to file an internal charge of discrimination or harassment, the OEEO official dissuaded her from making a formal complaint and the County took no investigative or remedial action. [Id. ¶¶ 50-52]. Ware continued making sexual comments to Fortune after her conversation with the OEEO official. Ware told Fortune about other employees being attracted to her, said that she was a "five star chick," and on a weekly basis, he would make comments in a sexually suggestive manner, such as saying that she had "nice, long legs" and that "she should wear dresses more often." [Doc. 1 ¶¶ 53-58]. Ware told Fortune that a female executive assistant "had told him she had had an orgasm because one of Ware's letters to an opposing lawyer was so well written." [Id. ¶ 56]. Ware said to Fortune

11

that Plaintiff Wanda Dallas "wanted to have sex with him but that he did not like dark-skinned women. Instead, Ware explained, he liked 'red-boned' women like Fortune." [Id. ¶ 57]. Ware also told Fortune that Plaintiff Dallas "needed a man to 'hit it good every now and then to knock the edge off of her sometimes.'" [Id. ¶ 58].

In late July 2010, Ware met privately with Fortune in her office and told her that he was attracted to her and that "if she were willing to have an affair with him, he understood what his financial responsibilities to her would be." [Doc. 1 ¶¶ 59-63]. At that time, Fortune was soon going to begin a scheduled medical leave. [Id. ¶ 61]. Fortune told Ware that she was not interested in having a relationship with him. [Id. ¶ 64]. Fortune went on medical leave, and when she returned in September 2010[3], she gave the office manager a letter from her doctor stating that Fortune was restricted to no more than five hours work per day. [Id. ¶¶ 65-67]. The complaint alleges that soon after Fortune's return to work, "Ware began to scrutinize and nitpick" her work more harshly and that despite her doctor's restrictions, Ware required Fortune to work six or more hours per day. [Doc. 1 ¶¶ 67-70]. Fortune allegedly told the same OEEO official to whom she had previously complained about Ware's sexual harassment about

---

[3]The complaint states that Fortune was out on medical leave until September 29, 2011, but the court presumes that this is a typographical error given the fact that Fortune resigned in December 2010. [Doc. 1 ¶¶ 65, 71].

his requiring her to work more hours than restricted by the doctor.  [Id. ¶ 69].  The complaint alleges, "As a result of this untenable working situation and the failure of County human resources to act in response to her complaints, Fortune was left with no other practicable option, and on December 20, 2010, Fortune handed Ware her resignation letter."  [Id. ¶ 71].

With regard to Plaintiff Dallas, who worked as a staff attorney in the Fulton County attorney's office, the complaint alleges that in late 2009, Ware began telling Dallas that he was having marital problems and that there were men interested in her and asking about her.  [Doc. 1 ¶ 82].  In the spring of 2010, Ware told Dallas that he was interested in her and attracted to her, and he "repeatedly made suggestive or promiscuous comments about Dallas's physical appearance during the remainder of her employment with the County Attorney's office."  [Id. ¶¶ 83-85].  During this same time period, Ware "solicited [Dallas] for sex or a physical relationship on several occasions."  [Id. ¶ 86].  On one occasion after a staff meeting, Ware allegedly told Dallas that she made it hard for him to concentrate during the meeting because he could not stop looking at her neck and that he wanted to bite her neck.  [Doc. 1 ¶ 89].  Shortly after Ware made these comments, Dallas met with the head of her unit, Senior Attorney Steven Rosenberg, and another attorney and told them about Ware's recent

comments and about the fact that he had been making sexual remarks to her for months.  [Id. ¶¶ 90-91].  The complaint states that to Dallas' knowledge, no investigative or remedial action was taken.  [Id. ¶ 93].

In the summer of 2010, Dallas spoke with Chief Deputy Jimmy Carter of the Fulton County Sheriff's Office about a job opportunity as counsel.  [Doc. 1 ¶ 87]. Dallas expressed interest in the job, and Chief Deputy Carter told Ware that the Sheriff's Office wished to hire Dallas.  [Id.].  In November 2010, Ware informed the office attorneys that they were relieved of their responsibility to handle tax appeals. Ware then allegedly "assigned Dallas, alone, to handle tax appeals, without reducing any of her previously existing workload."  [Doc. 1 ¶ 94].  In November or December 2010, Ware called Dallas into his office and wrote, on post-it notes, "Are you interested in having a relationship with me?"  Ware also nodded in the direction of the couch in his office.  Dallas again rejected Ware's advance.  [Id. ¶ 95].  The Sheriff's Office finalized Dallas' new position as in-house counsel in December 2010, and Dallas subsequently gave Ware her two-week notice letter of resignation.  [Id. ¶¶ 96, 97].  Ware allegedly looked at the letter and asked Dallas, "Since you are not going to be working for me anymore, can we have a relationship?"  After Dallas told him no, Ware said, "Okay, then today is your last day."  [Id. ¶¶ 98, 99].

14

The court finds that dismissal is not warranted on the tangible employment action sexual harassment claims of Fortune and Dallas because they have asserted "factual content that allows the court to draw the reasonable inference" that they were constructively discharged. Iqbal, 129 S. Ct. at 1949. The complaint alleges that Ware asked Fortune to have an affair with him, frequently made sexually suggestive comments and sexual advances to her, and that on multiple occasions, Ware told Fortune that she needed someone to take care of her, that her fiancé was not capable of doing that, and that Ware was having marital difficulties. [Doc. 1 ¶¶ 48-63]. Ware also told Fortune that a female executive assistant had had an orgasm after reading one of his letters and that Plaintiff Dallas wanted to have sex with him but that "he liked 'red-boned' women like Fortune." [Id.]. The complaint alleges that Ware told Dallas about his marital problems, that he said that he was interested in her and attracted to her, and that he "repeatedly made suggestive or promiscuous comments about Dallas's physical appearance" [Id. ¶¶ 83-85]. Ware also "solicited [Dallas] for sex or a physical relationship on several occasions." [Id. ¶ 86].

The allegations in the complaint also reveal that after Fortune and Dallas rejected Ware's sexual advances, he made decisions as their supervisor that made their working conditions more difficult. Although "[d]iscrete acts cannot alone form the

15

*basis* of a hostile work environment claim[,]" they may be considered as part of such a claim. Gowski v. Peake, 682 F.3d 1299, 1312-13 (11th Cir. 2012). Fortune alleges that Ware began to scrutinize her work more harshly and that he ignored her doctor's restrictions regarding work hours. [Doc. 1 ¶¶ 67-70]. Dallas alleges that Ware reassigned all of the tax appeals to her without reducing any of her workload. [Doc. 1 ¶ 94]. Dallas also claims that after she gave Ware her two-week notice and again declined his request for a relationship, he told her, "[T]oday is your last day." [Id. ¶¶ 96-99].

In addition, the complaint alleges that although both Fortune and Dallas complained about Ware's sexual harassment, Fulton County failed to respond to their complaints in any way. This fact is particularly significant to their constructive discharge claims. In Reed v. Gulf Coast Community College, 2010 WL 2926556, at *10 (N.D. Fla. June 29, 2010), the court noted, "Relevant, and perhaps critical, to the court's analysis of an employee's constructive discharge claim is whether the employer took reasonable steps to respond to the employee's complaints about harassment." Similarly, in Tucker v. Georgia Dep't of Public Safety and its Div., 2009 WL 2135807, at *8 (S.D. Ga. July 15, 2009), the court wrote, "Plaintiff testified that she made innumerable complaints about her hostile work environment, but that her supervisors,

AO 72A
(Rev.8/82)

and Rodgers, did nothing to correct or prevent the abuse.  An employee's attempt to

correct the problem, and a lack of any meaningful response, properly factors in to the

constructive discharge analysis."  In the present case, Fortune told an OEEO official

about Ware's unwanted sexual advances toward her, and Dallas reported Ware's

sexual remarks to the head of her unit.  [Doc. 1 ¶¶ 50, 90-91].  Fulton County,

however, took no action in response to the complaints of Fortune and Dallas, and

Ware's alleged sexually harassing conduct toward them continued.  In light of the

complaint's allegations of constructive discharge, the undersigned finds that the

tangible employment action sexual harassment claims of Plaintiffs Fortune and Dallas

"'possess enough heft' to set forth 'a plausible entitlement to relief[.]'" Stephens, 500

F.3d at 1282 (quoting Twombly, 127 S. Ct. at 1966-67).  Dismissal pursuant to Rule

12(b)(6) is not warranted.

### B.      Liability of Fulton County

The complaint alleges that Defendant Fulton County violated the Equal

Protection Clause by subjecting Plaintiffs to a sexually hostile work environment.

Plaintiffs have asserted their claims against Fulton County pursuant to 42 U.S.C. §

1983. [Doc. 1].  The law is well established that counties and other local governmental

entities may not be held liable under § 1983 for Constitutional violations by officials

on a theory of *respondeat superior*.  See Monell v. Dep't of Social Services of the City of New York, 98 S. Ct. 2018, 2036 (1978); Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997).  Instead, "a local government can only be held liable under § 1983 for acts of one of its officers if the plaintiff can establish that an official local government custom or policy was the 'moving force' behind the deprivation of a constitutional right."  Robbins v. Chatham County, 863 F. Supp. 2d 1367, 1373 (S.D. Ga. 2012) (quoting Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 117 S. Ct. 1382, 1388 (1997)).

"There are three ways to show a governmental policy or custom: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom; or (3) the act or decision of a municipal official with final policy-making authority."  Rodriguez v. City of Clermont, 681 F. Supp. 2d 1313, 1329 (M.D. Fla. 2009) (citing Cuesta v. School Board of Miami-Dade County, Florida, 285 F.3d 962, 966-68 (11th Cir. 2002)).  A county will rarely have an officially-adopted policy of permitting a particular constitutional violation.  Therefore, most plaintiffs must show that the county has a custom or practice of permitting the constitutional violation and "that the county's custom or practice is the moving force [behind] the constitutional

18

violation." <u>Grech v. Clayton County, Georgia</u>, 335 F.3d 1326, 1330 (11th Cir. 2003) (citations and internal quotation marks omitted).

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law[.]" <u>Brown v. City of Fort Lauderdale</u>, 923 F.2d 1474, 1481 (11th Cir. 1991) (citations and internal quotation marks omitted). The Eleventh Circuit has "also held that a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy 'if the municipality tacitly authorizes these actions or displays deliberate indifference' towards the misconduct." <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1308 (11th Cir. 2001) (quoting <u>Brooks v. Scheib</u>, 813 F.2d 1191, 1193 (11th Cir. 1987)). In the present case, the court finds that Plaintiffs have made sufficient factual allegations to "show that the county has a custom or practice of permitting" the constitutional violation. <u>Grech</u>, 335 F.3d at 1330.

The complaint alleges that in April 2010, Plaintiff Fortune informed an official in the Fulton County OEEO that Defendant Ware had been making unwanted sexual advances toward her. [Doc. 1 ¶ 50]. Fortune also told the OEEO official that she

19

wished to discuss how to file an internal charge of discrimination or harassment. [Id.]. According to the complaint, the OEEO official dissuaded Fortune from making a formal complaint against Ware. [Id. ¶ 51]. The OEEO official[4] also allegedly told Fortune that filing a complaint against Ware would be like "David and Goliath." [Id.]. Fulton County took no investigative or remedial action. [Id. ¶ 52].

The complaint also alleges that in or around the summer of 2010, Plaintiff Dallas met with the head of her unit, Senior Attorney Steven Rosenberg, and Coy Johnson, another attorney in the Fulton County office. [Doc. 1 ¶¶ 85-90]. Dallas told Rosenberg and Johnson that after a recent staff meeting, Ware had said that Dallas made it hard for him to concentrate during the meeting because he could not stop looking at her neck and that he wanted to bite her neck. [Id. ¶¶ 89-90]. Dallas also informed Rosenberg and Johnson that Ware had been making sexual remarks to her for months and that she did not know what to do. [Id. ¶ 91]. In addition, Dallas told the two attorneys that Ware's behavior was inappropriate and that it was making her feel very uncomfortable. [Id.]. According to the complaint, Rosenberg responded to Dallas' statements by putting his head in his hands and saying something like, "This

---

[4]At some point after Fortune returned from medical leave in September 2010, she informed the same OEEO official that Ware was requiring Fortune to work more hours than the amount restricted by her doctor. [Id. ¶¶ 67-69].

guy's crazy." [Id. ¶ 92].  To Dallas' knowledge, Fulton County took no investigative or remedial action.  [Id. ¶ 93].

Defendants argue that Plaintiffs cannot show that Fulton County had knowledge of Ware's sexual harassment because none of the Plaintiffs complied with the County's grievance procedure.  [Doc. 19 at 12-13].  Fulton County has a sexual harassment policy which provides in part, "Any employee who believes that he or she has been subjected to sexual harassment should file a written complaint with the department of contract compliance and EEO."[5]  [Doc. 15 at 10, Section 154-5(e)].  Defendants argue that because none of the Plaintiffs filed a written complaint, the County cannot be found to have permitted the sexual harassment.  [Doc. 19 at 12-13].  This argument is unpersuasive.

The Fulton County sexual harassment policy prohibits "[s]exual harassment of any person employed" by the County and lists sexual innuendo and sexual propositions as examples of sexually harassing conduct.  [Doc. 15 at 10, Section 154-5(b), (d)].  The sexual harassment policy also provides that "the department of contract compliance

---

[5]The Fulton County policy [Doc. 15] will be reviewed by the undersigned in addressing Defendants' motion to dismiss without converting the motion into one for summary judgment because the document is central to Plaintiffs' claim and undisputed as to its authenticity.  See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002). Plaintiffs and Defendants cite to the policy in support of their arguments.

and EEO shall have responsibility for investigating complaints of sexual harassment" and that "[s]uch complaints shall have priority."  [Doc. 15 at 10, Section 154-5(e)]. Plaintiff Fortune allegedly informed an OEEO official that Defendant Ware had been making unwanted sexual advances toward her and that she wanted to know how to file an internal charge.  [Doc. 1 ¶¶ 50-52].  But according to the complaint, the OEEO official did not assist Fortune and give priority to her allegations in accordance with County policy.  Instead, the OEEO official allegedly took the egregious step of dissuading a victim of sexual harassment from making a formal complaint.  [Id.].  The Fulton County prejudicial acts policy provides in part:

> Upon receiving a complaint, the supervisor will confer the initial complainant and take measures to ensure that all necessary preliminary actions have been taken and inform management (i.e., department head or deputy director) of the prejudicial act.  The supervisor will request the assistance of appropriate personnel necessary to provide immediate assistance to the complainant, such as: . . . (4) Notifying other appropriate personnel in the chain of command and the contract compliance and EEO department depending on the nature and seriousness of the offense, and its potential inflammatory and related impact on the department and Fulton County.

[Doc. 15 at 15, Sec. 154-465].  Plaintiff Dallas informed the head of her unit, Senior Attorney Rosenberg, that Ware had been making sexual remarks to her for months. [Doc. 1 ¶ 85-91].  But the complaint alleges that Rosenberg did not take any steps to

22

notify management and the department of contract compliance and EEO about Ware's actions and that no responsive action was taken by Fulton County in any form.  In light of these allegations, the court finds that the complaint contains "factual content that allows the court to draw the reasonable inference" that Fulton County was notified of Ware's sexually harassing behavior but tacitly authorized or displayed deliberate indifference to it.  Iqbal, 129 S. Ct. at 1949.

Defendant next argues that Plaintiff Dixon's § 1983 claim against Fulton County based on her termination must be dismissed because Ware's termination decision was subject to meaningful review and Dixon made no effort to file a grievance.  [Doc. 12 at 17-18; Doc. 19 at 13-14].  Local governmental liability under § 1983 "'may be premised on a single illegal act by a government officer [but] only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter'" for the governmental entity.  Maschmeier v. Scott, 269 Fed. Appx. 941, 943 (11th Cir. 2008) (sheriff was not final policymaker for county, precluding county's liability under § 1983 for sheriff's allegedly wrongful termination of deputy) (quoting Morro v. City of Birmingham, 117 F.3d 508, 510 (11th Cir. 1997)); see also Quinn v. Monroe County, 330 F.3d 1320, 1325 (11th Cir. 2003) (administrator who terminated director was not

23

final policymaker, precluding county's liability under § 1983 for administrator's actions).  An official must be responsible for establishing final governmental policy respecting such activity before a county can be held liable.  See Pembaur v. City of Cincinnati, 106 S. Ct. 1292, 1299-1300 (1986).  A governmental official is not considered a final policymaker, thus precluding a governmental entity's § 1983 liability for the official's actions, if the official's decisions are subject to meaningful review.  See Scala, 116 F.3d at 1399 (§ 1983 liability of city precluded where termination decision was subject to review by city civil service board); Keaton v. Cobb County, 545 F. Supp. 2d 1275, 1315 (N.D. Ga. 2008) (§ 1983 liability of county precluded where promotion decisions were subject to meaningful civil service review; hence director was not the final policymaker).  Automatic review is not required, but there must be an actual opportunity for meaningful review. See Keaton, 545 F. Supp. 2d at 1315.

In the present case, Defendants correctly note that Plaintiff Dixon failed to comply with Fulton County policy which provides a mechanism for filing a complaint about a discriminatory personnel action. [Doc. 12 at 17-18; Doc. 19 at 13-14]. Fulton County has a prejudicial acts policy which provides in part, "Any employee who believes that he or she has been subjected to a prejudicial act or incident should file a

24

written complaint with the department of contract compliance and EEO." [Doc. 15 at 16, Section 154-466(b)]. The policy further provides that the department of contract compliance and EEO will investigate the complainant's allegations of prejudicial acts and make recommendations based on the investigation. [Doc. 15 at 16, Section 154-466(c)]. The Fulton County sexual harassment policy contains similar provisions. [Doc. 15 at 11, Section 154-5(f)].

Plaintiff Dixon alleges in the complaint that Ware terminated her employment "because she would not acquiesce to his sexual demands." [Doc. 1 ¶ 44]. Dixon, however, does not allege that she filed a written complaint with Fulton County about Ware. Moreover, unlike Plaintiffs Fortune and Dallas, Dixon makes no allegation that she ever made a written or verbal complaint to anyone within Fulton County about Ware's alleged harassment or about his decision to terminate her employment. These facts support Defendants' argument that Fulton County was not aware of Dixon's allegation that Ware fired her because she refused to comply with his sexual demands.

The deficiency in Fulton County's argument, however, is that although Dixon did not file a grievance or otherwise complain about Ware's termination decision, the County has failed to show that Ware's personnel decisions are subject to meaningful review. As previously discussed, a governmental official is not considered a final

25

policymaker, and § 1983 liability of a local government is precluded for the official's actions, if the official's decisions are subject to meaningful review.  See Scala, 116 F.3d 1399.  "When a council or board has the power to review and reverse a municipal official's decision, final policymaking authority does not vest in the official."  Maschmeier, 269 Fed. Appx. at 943 (citation omitted).

Defendants argue, "As an official appointed by the Board of Commissioners, Ware is at all times subject to the Board's authority to reverse and correct his decisions if it finds a violation of County policy."  [Doc. 12 at 18].  In support of this assertion, Defendants cite to Section 154-5(f) of Fulton County's sexual harassment policy. [Id.].  The cited portion of the policy, however, merely provides that employees who have been subjected to disciplinary action for violation of the sexual harassment policy have a right to appeal the disciplinary action.  [Doc. 15 at 11, Section 154-5(f)].  This section is not relevant to the present case because there is no allegation that any employee was ever disciplined for violating the sexual harassment policy.

The County's prejudicial acts policy, as filed with the court by Defendants, also does not establish a mechanism for the Board to reverse and correct decisions made by the County Attorney.  The policy provides that after an employee complains of a prejudicial act, the department of contract compliance and EEO "will make a

26

recommendation to the county manager and the department head, regarding whether the complainant has been a victim of a prejudicial act, and any corrective action recommendations." [Doc. 15 at 16, Section 154-466(c)].  The prejudicial acts policy also provides that employees who have been subjected to disciplinary action for violation of the prejudicial acts policy have a right to appeal the disciplinary action. [Doc. 15 at 16, Section 154-467].  However, there is nothing in the prejudicial acts policy which provides a mechanism for the Board of Commissioners to review and reverse a personnel decision made by an official such as the County Attorney.  [Id.].

Defendants have not cited to any policy showing that Ware's personnel decisions are subject to meaningful review.  From the court's review of the policies filed by Defendants, it appears that if Dixon had filed a grievance about Ware's decision to terminate her employment, the department of contract compliance and EEO had the authority to "make a recommendation" about "any corrective action" that should be taken.  [Doc. 15 at 16, Section 154-466(c)].  But even assuming that the department of contract compliance and EEO had recommended that Ware's decision to fire Dixon be reversed, the policy provides that this recommendation would go to "the county manager and the department head."  And as far as the court is able to determine, there is nothing in the attached Fulton County policies which indicates that

27

either the county manager or any department head has the authority to reverse the County Attorney's personnel decisions.

In summary, Defendants assert that Ware is "subject to the Board's authority to reverse and correct his decisions if it finds a violation of County policy." [Doc. 12 at 18]. Defendants, however, have failed to cite to any County policy which supports their contention that Dixon's firing could have been reversed. Because Defendants have not established that Ware's decision to terminate the employment of Plaintiff Dixon was subject to meaningful administrative review, the undersigned finds that Defendants' motion to dismiss should be denied on Dixon's § 1983 claim against Fulton County based on her termination.

## C.    Qualified Immunity

Defendants next argue that Plaintiffs' claims against Defendant Ware in his personal capacity should be dismissed pursuant to Rule 12(b)(6) because he is entitled to qualified immunity. [Doc. 12 at 19-30]. "Qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) (citing Harlow v.

28

Fitzgerald, 102 S. Ct. 2727, 2738 (1982)).  A defendant invokes qualified immunity by establishing that "he was acting within the scope of his discretionary authority." Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009).  In the present case, Plaintiffs do not dispute that Defendant Ware was acting within the scope of his discretionary authority.  [Doc. 16 at 24].  Therefore, "the burden shifts to the plaintiff[s] to show that the defendant is *not* entitled to qualified immunity."  Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004) (emphasis in original).

"For the law to be clearly established, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." Sherrod v. Johnson, 667 F.3d 1359, 1363 (11th Cir. 2012) (citations and internal quotation marks omitted).  "But general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful . . . ."  United States v. Lanier, 117 S. Ct. 1219, 1227 (1997) (citations, internal quotation marks, and brackets omitted); accord Hope v. Pelzer, 122 S. Ct. 2508, 2516 (2002).  Therefore, a court must "not just compare the facts of an instant

29

case to prior cases to determine if a right is 'clearly established;' [the court must] also assess whether the facts of the instant case fall within statements of general principle from [Eleventh Circuit] precedents." Holloman, 370 F.3d at 1278.

Under the Equal Protection Clause, Plaintiffs "have a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment." Cross v. State of Alabama, State Dep't of Mental Health & Mental Retardation, 49 F.3d 1490, 1507 (11th Cir. 1995). To prevail on a hostile work environment claim under the Equal Protection Clause, a plaintiff must prove that: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee, such as race or gender; (4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment; (5) the defendant acted under color of state law; and (6) the defendant acted with discriminatory purpose or intent. See Watkins v. Bowden, 105 F.3d 1344, 1355 (11th Cir. 1997). Defendants argue that Plaintiffs cannot show that any clearly established law would have put a reasonable employee on notice that the conduct allegedly committed by Ware could be considered unlawful sexual harassment because it was not sufficiently severe or pervasive. [Doc. 12 at 23-29]. The court disagrees.

30

Plaintiff Dixon alleges in the complaint that beginning in the middle of 2010, Ware began making sexual comments to her and repeatedly pressured her to have sex with him.  [Doc. 1 ¶¶ 16-28].  The complaints states, "On multiple occasions, Ware told [Dixon] that he and she could have sex on the couch in his office.  Ware often added that, since he was the boss, he could just lock his office door and no one would ever know."  [Id. ¶ 17].  With regard to Plaintiff Fortune, the complaint alleges that Ware frequently made sexually suggestive comments and sexual advances to her for many months.  [Doc. 1 ¶ 50].  Ware allegedly made sexual comments to Fortune on a weekly basis, until late July 2010, when he met privately with her in her office and asked her to have an affair with him.  [Id. ¶¶ 48-63].  With regard to Plaintiff Dallas, the complaint asserts that from the spring through the summer of 2010, Defendant Ware repeatedly made sexually suggestive comments to her and "solicited her for sex or a physical relationship on several occasions."  [Doc. 1 ¶¶ 83-95].  Plaintiffs claim that among other things, Ware called Dallas into his office and while nodding in the direction of his office couch wrote, on post-it notes, "Are you interested in having a relationship with me?"  [Id. ¶ 95].

The Eleventh Circuit has noted that "[e]ither severity *or* pervasiveness is sufficient to establish" a hostile work environment.   Reeves v. C.H. Robinson

31

<u>Worldwide, Inc.</u>, 594 F.3d 798, 808 (11th Cir. 2010) (emphasis in original).  The court finds that in the present case, Plaintiffs have alleged a sufficient level of both pervasiveness and severity to state a claim for relief.  The complaint alleges that Defendant Ware made sexually-charged comments and solicitations for sex to Plaintiffs and that this sexually harassing conduct occurred on a frequent basis.  In addition, as discussed *supra*, Plaintiffs have alleged that Ware took "adverse employment actions against [them] for their refusal to acquiesce to [his] sexual advances."  [Doc. 1 ¶ 111].

In <u>McDaniel v. Fulton County School Dist.</u>, 233 F. Supp. 2d 1364, 1380-82 (N.D. Ga. 2002), this court addressed the question of whether an individual defendant was entitled to summary judgment based on qualified immunity for the claims asserted against him individually under § 1983.  The court held, "[I]n 1998, when [the individual Defendant] allegedly began harassing the plaintiff, the law was clearly established that making repeated unwelcome sexual overtures to a co-worker, and making other derogatory remarks of a sexual nature, could be considered unlawful sexual harassment."  <u>Id.</u> at 1381.  In the present case, at the time Defendant Ware allegedly sexually harassed Plaintiffs and took adverse actions against them after they refused his sexual advances, the law was developed in such a way to make it clear to

32

a person in Ware's position as County Attorney that his actions violated federal law. Accordingly, the undersigned finds that at this stage of the litigation, Plaintiffs have offered sufficient allegations in the complaint to carry their burden of showing that Defendant Ware is not entitled to qualified immunity.

## III.    Conclusion

For all the foregoing reasons and cited authority, the undersigned finds that Plaintiffs' complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 127 S. Ct. at 1974).  The undersigned, therefore, **RECOMMENDS** that Defendants' Rule 12(b)(6) motion [Doc. 12] to dismiss Plaintiffs' complaint be **DENIED**.

**SO RECOMMENDED THIS** 20th day of May, 2013.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

33